UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| THERESE KAPINGA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No: 2:22-cv-00322-KFW |
| ) | |
| TERRACE POND, LLC and PIZZO'S ) | |
| PROPERTY MANAGEMENT, INC. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

Defendants Terrace Pond, LLC and Pizzo's Property Management, Inc. (hereinafter "Terrace Pond", "Pizzo's Property", and collectively "Defendants"), by and through counsel Norman Hanson & DeTroy, move for summary judgment on Plaintiff Therese Kapinga's ("Kapinga") First Amended Complaint (ECF #16) pursuant to Fed. R. Civ. P. 56 and Local Rule 56. Defendants' Supporting Statement of Material Facts filed pursuant to Fed. R. Civ. P. 56(c)(1) and Local Rule 56(b) is filed contemporaneously and is incorporated herein by reference. The grounds for this Motion are set forth more fully in the Incorporated Memorandum of Law.

**Incorporated Memorandum of Law**

*I.   Procedural History*

This case arises out of Kapinga's six-count Complaint dated October 21, 2022. (ECF #1). Defendants filed a timely Motion to Dismiss on December 15, 2022 (ECDF #4), which was opposed by Kapinga. (ECF #9). Contemporaneous with her Response in Opposition (ECF #9), Kapinga filed a Motion for Leave to File First Amended Complaint (ECF # 8), which was opposed by Defendants (ECF #11).

On July 27, 2023, this Court issued its Recommended Decision on the Motion to Dismiss and Motion to Amend (ECF #14), which was affirmed by Judge Woodcock on August 15, 2023. (ECF #15).  In its Decision, this Court dismissed the portion of Count I claiming violations of the Maine's Civil Rights Act, 5 M.R.S. § 4684-A, the portion of Count II claiming retaliation in violation of 5 M.R.S. § 4633(1), Count IV (Negligence), and Count VI (Negligent Infliction of Emotional Distress).  (ECF #14, PageID #102).  This Court further granted Kapinga's Motion to Amend to the extent that Kapinga sought to revise factual content, incorporate her concessions, and add an Unfair Trade Practices Act claim predicated on a failure to renew her lease or return her security deposit.  (ECF #18, PageID ##102-03).

Pursuant to this Court's Order, Kapinga filed her final First Amended Complaint on August 28, 2003 (ECF #16), which was timely answered by Defendants.  (ECF #18).  In her final First Amended Complaint, which takes into account this Court's Order on the Motion to Dismiss,[1] Kapinga asserts the following causes of action.

- Count I: Unlawful Housing Discrimination, 5 M.R.S. § 4581-4583;
- Count II: Hostile Housing Environment, 5 M.R.S. § 4581-4583;
- Count III: Intentional Infliction of Emotional Distress; and,
- Count IV: Violation of Maine's Unfair Trade Practices Act.

The gravamen of Kapinga's Complaint is that Defendant's non-renewal of her lease was due to her Congolese national origin rather than due to a cockroach infestation.  The legal issue is whether an alleged stray comment, that Kapinga was the source of the cockroach infestation that came in through food from her country, is sufficient to support Kapinga's claims of racial *animus* on the part of Defendants' representative, Sean Duffy ("Duffy").

---

[1] *See* Court's Recommended Decision on Motions to Dismiss and to Amend Complaint at n.2 (ECF No. 14, PageID #: 86-87).

## II.     *Factual Background*

On December 28, 2020, Kapinga signed a Residential Lease Agreement to lease Apartment 411 from Terrace Pond. *Defendants' Statement of Undisputed Material Fact,* ¶ 1 (hereinafter "*DSUMF*"). Duffy signed on behalf of Terrace Pond. *Id.* On that same date, Kapinga signed the Rules and Regulations for the Apartment. *DSUMF,* ¶ 2.

Kapinga met Duffy when she first moved into the Apartment, and Duffy was kind to her. *DSUMF,* ¶ 3. Kapinga's experience at Terrance Pond and with Duffy was good prior to the cockroach issue. *DSUMF,* ¶ 4.

Kapinga first noticed cockroaches in her Apartment in the middle of August 2021. *DSUMF,* ¶ 5. Kapinga first notified Duffy and Terrace Pond of the presence of cockroaches on September 9, 2021 at 9:33 am by sending a Maintenance Request Form. *DSUMF,* ¶ 6. At 1:08pm on that same day, Duffy responded and indicated that he would drop off information regarding the cockroach issue and Duffy would have Waltham Pest Services respond. *DSUMF,* ¶ 7.

On September 10, 2021, Duffy dropped off the information sheet, which outlined what needed to be done to address the cockroach issue and informed Kapinga that Waltham Pest Services would treat the Apartment on September 13, 2021. *DSUMF,* ¶ 8. On September 10, 2021, Duffy and Kapinga also observed that the Apartment was infested with cockroaches. *DSUMF,* ¶ 9. On September 13, 2021, Waltham Pest Services responded to the cockroach issue in the Apartment and noted high activity of cockroaches concentrated in the kitchen. *DSUMF,* ¶ 10.

On September 21, 2021, Duffy delivered a seven-day notice of termination "due to the insect activity located in apartment #411 as it has a detrimental impact for the safety and well-being [sic] of other tenants at Terrace Pond. This notice is located as stated in the lease under

section 17, Subsection C. *Eviction for Dangerous Acts*." DSUMF, ¶ 11. According to Kapinga and Kapinga's daughter, Nelly Efambe Mabeka ("Efambe"), after issuing the seven-day notice of termination, Duffy told Efambe that Kapinga's Apartment was the source of the cockroaches and came in through food from her country. DSUMF, ¶ 12.

On September 22, 2021, Robert Chiamulera ("Chiamulera") of Waltham Pest Services conducted an inspection of the Apartment and surrounding units. DSUMF, ¶ 13. Chiamulera also observed that Kapinga's Apartment had the most cockroaches and surrounding units had less activity, and that the cockroach activity in Kapinga's Apartment was concentrated in the kitchen. DSUMF, ¶ 14-15. Based on his observations, Chiamulera determined that the cockroaches had been present for more than two months. DSUMF, ¶ 16. After Kapinga reported the cockroach infestation and the cockroach infestation was confirmed in the Apartment, a neighboring tenant, Oyinade Adepoju, reported to Duffy that cockroaches were in her unit and were coming in under the door. DSUMF, ¶ 17. On October 15, 2021, Duffy sent Kapinga a 75-day notice to vacate the Apartment. DSUMF, ¶ 18.

### III.  *Legal Standard on Motion for Summary Judgment*

The standard for evaluating a Motion for Summary Judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied as to any supported claim. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

### IV.     *Legal Argument*

The linchpin of Kapinga's claims are that Defendant's actions were motivated by her Congolese national origin and not because her Apartment was infested with cockroaches, which went unreported and as a result, worsened. Kapinga's proof of Duffy's racial *animus* is a single alleged comment regarding Kapinga's role in the cockroach infestation. The legal issue presented to this Court is whether this alleged, single comment that Kapinga was the source of the cockroach infestation is sufficient to support a claim of racial *animus*.

In its Recommended Decision, this Court noted the distinction between an alleged, stray accusation that Kapinga was the source of the cockroach infestation because of her national origin and the additional accusations set forth in the Complaint and Amended Complaint. With respect to Kapinga's allegations, this Court observed:

> [B]*ecause* the Defendants <u>falsely</u> accused her of being the source of the infestation based on her national origin, they failed to adequately treat the infestation, worsening it, sought to evict her, refused to renew her lease and wrongfully withheld her security deposit.

5

*Recommended Decision* at p.7 (ECF 14, PageID#: 91) (underline added).

Each of these allegations and the lack of *prima facie* evidence supporting the allegations will be addressed below:

*First*, there is no dispute that the cockroach infestation was heaviest in Kapinga's Apartment and that the cockroaches were concentrated in her kitchen. *DSUMF*, ¶¶ 9-10, 14-15. It is objectively reasonable for a person to conclude that the source of the cockroach infestation in the building was Kapinga's Apartment, and more specifically the food in her kitchen.

Duffy's alleged statement to Kapinga and her daughter, Efambe, that Kapinga was the likely source is not unreasonable and does not constitute discrimination based on illegal, racial *animus*. "[A] statement that can plausibly be interpreted two different ways - one discriminatory and the other benign - does not directly reflect illegal animus and, thus, does not constitute direct evidence of racial discrimination." *Fernandes v. Costa Bros. Masonry,* 199 F.3d 572, 583 (1st Cir. 1999). For example, in *Fernandes,* the Court concluded that a business owner's statements: "I don't need minorities, and I don't need residents on this job" and "I don't have to hire you locals or Cape Verdean people" did not constitute direct evidence of racial discrimination because they were susceptible of nondiscriminatory meanings. *Id.* Under this standard, as a matter of law, the statements concerning Kapinga's role in the cockroach infestation are not in and of themselves discriminatory and therefore, they are not direct evidence of racial *animus*.

*Second*, there is a lack of any admissible evidence that Defendants failed to adequately treat the cockroach infestation and worsened it based on her national origin. In fact, the only evidence is that Defendants hired Waltham Pest Services who are professionals and experts in the field to treat the cockroach infestation multiple times. Kapinga has not alleged, and there is no

admissible evidence, that Waltham Pest Services performed their services based on any racial *animus* based on Kapinga's national origin.

*Third*, although Defendants filed a Forcible Entry and Detainer (FED) Action, it was dismissed without prejudice by the State of Maine District Court on October 21, 2021 on the grounds that the FED complaint was void *ab initio* because it was signed by a non-attorney for Terrace Pond, LLC. *DSUMF*, ¶19. Accordingly, there were no findings or adjudication on the merits. Again, the sole evidence of racial *animus* is the comment about the source of the cockroaches. However, there was no adverse action resulting from the mere filing of the notice.

*Fourth,* there is no admissible evidence that the Defendants wrongfully withheld her security deposit based on Kapinga's national origin. In her First Amended Complaint, Kapinga does not allege a breach of contract claim or statutory action for the value of the security deposit. *See* 14 M.R.S. § 6033. Kapinga's claims rise and fall solely on her claims of racial *animus*. However, other courts around the country have found that a single comment far more offensive and egregious than those attributed to Duffy are insufficient to support a discrimination claim:

- *Hooten v. Wal-Mart Inc.,* 2021 WL 1234507, at *3 (E.D. N.C. April 1, 2021) (transgender employee's allegation that assistant manager avoided her and called her "it," apparently instead of using her preferred pronoun was "not severe or pervasive enough to support a hostile work environment claim").

- *Jones v. Dallas County,* 2014 WL 1632154, at *8 (N.D. Tex. April 23, 2014) ("plaintiffs allege here that Womble twice played a cell phone animation containing the word "n----r," which one plaintiff saw and overheard. While this behavior, assuming it occurred, should not be condoned in the workplace, it is insufficient to establish a hostile work environment").[3]

- *Frazier v. Sabine River Auth. La.,* 509 Fed. Appx. 370, 374-375 (5th Cir. 2013) (per curiam), *cert. denied, 571* U.S. 857, U.S. (2013) (affirming summary judgment on hostile work environment claim where, although there was evidence that coworker used the word "n----r" in plaintiff's presence and of three other instances of racial discrimination, they were isolated instances and not severe or pervasive enough to support hostile work environment claim);

7

- *Deloatch v. Harris Teeter, Inc.,* 797 F. Supp.2d 48, 62-63 (D. D.C. 2011) (plaintiff's allegations that manager directed the term "n---r" towards him on one occasion and that he overheard it used on another insufficient to sustain hostile work environment claim) (collecting cases); and

- *Ballard v. IL Central RR. Co.,* 269 F. Supp.3d 867, 874-875 (N.D. 111. 2017) (granting defendants' motion for summary judgment where no reasonable juror could conclude that racial animus was the reason for railroad employee's termination, precluding recovery).

In the present case, this alleged, stray comment is not sufficient to support a claim for racial discrimination based on illegal, racial *animus*. *See Hornsby v. Conoco, Inc., 777* F.2d 243, 246-247 (5th Cir. 1985) (plaintiff's mere subjective belief and allegations that she was discriminated against cannot be the basis for judicial relief where adequate nondiscriminatory reasons are presented).

**A. The alleged, stray comment the Kapinga's food was the source of the cockroach infestation is insufficient to support a *prima facie* case establishing a claim for Unlawful Housing Discrimination as alleged in Count I.**

Based on the undisputed material facts, it was reasonable for Duffy to conclude that Kapinga's Apartment was the source of the cockroach infestation. Kapinga's mere subjective belief that she was discriminated against cannot be the basis for judicial relief where adequate nondiscriminatory reasons are presented. *Hornsby v. Conoco, Inc., 777* F.2d at 246-247 (5th Cir. 1985). Because the present case is based on circumstantial evidence, this Court should apply a McDonnell-Douglas burden-shifting analysis. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Udo v. Tomes,* 54 F.3d 9, 13 (1st Cir. 1995). The Defendants have provided a legitimate, non-discriminatory reason for beginning eviction proceedings, which were dismissed as void *ab intio*. Accordingly, the burden of proof now shifts to Kapinga to establish that this reason was false and that the true reason was unlawful discrimination.

The standard for proving pretext is high, and cannot be the result of simply second-guessing a business decision. *See, e.g., Martinez-Burgos v. Guayama Corp.,* 656 F.3d 7, 14 (1st Cir. 2011) ("[r]ebutting a proffered legitimate reason for the adverse action is more demanding than the relatively

8

low bar at the *prima facie* stage of the burden-shifting framework") (internal citation omitted; employment discrimination); *Gadson v. Concord Hosp.,* 966 F.2d 32, 34 (1st Cir. 1992) ("[a] plaintiff may not simply refute or question the employer's reasons") (employment discrimination). It is not enough for Kapinga merely to impugn the veracity of Defendants reasons for their actions; she must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: discrimination." *Mesnick v. GenL Elec. Co.,* 950 F.2d 816, 825 (1st Cir. 1991). In the present case, a single, stray comment is not sufficient to satisfy this evidentiary burden.

### B. In Count II, alleging Hostile Housing Environment, Kapinga has failed to state a claim and has failed to set forth a *prima facie* case.

In its Recommended Decision on the Motion to Dismiss, this Court properly noted, *sua sponte*, that the First Circuit and the Law Court have not recognized hostile housing environment causes of action under the federal Fair Housing Act and the Maine Human Rights Act. (ECF #14, PageID#: 90). Although this Court relied on the Seventh Circuit's decision in *Wetzel v. Glen ST. Andrew Living Cmty, LLC*, 901 F.2d 865, 861-62 (7th Cir. 2018) in its analysis, with respect to any state law claims, this Court is confined to existing law. *See Douglas v. York Cty.*, 433 F.3d 143, 149 (1st Cir. 2005) ("It is not our role to expand Maine law; that is left to the courts of Maine"). Accordingly, Count II fails to state a claim. Fed. R. Civ. P. 12(b)(6).

Although Kapinga's claims in her First Amended Complaint may be sufficient to satisfy the "severe and pervasive" test, the lack of admissible evidence to support those allegations are fatal to those same claims. For the reasons set forth in the preceding arguments, Defendants are entitled to summary judgment on Count II.

**C. In Count III, Kapinga has failed to set forth a *prima facie* case for a claim for Intentional Infliction of Emotional Distress.**

As this Court noted in its Recommended Decision (ECF Doc. No. 14; PageID #94-95), to set forth a *prima facie* case for Intentional Infliction of Emotional Distress, Kapinga must show that:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.
>
> *Argereow v. Weisberg*, 2018 ME 140, ¶ 27, 195 A.3d 1210 (cleaned up). "The determination of whether the facts alleged are sufficient to establish that the defendant's conduct is so extreme and outrageous to permit recovery is a question of law for the court to decide." *Id*. (cleaned up).

(ECF Doc. No. 14; PageID #94-95).

For the same reasons set forth in the preceding sections, Kapinga has failed to set forth a *prima face* case. First, it was entirely reasonable to believe the source of the cockroach infestation was the location of the greatest infestation and cockroach activity; namely, Kapinga's Apartment and within the Apartment, her kitchen. As a matter of law, holding or expressing this belief was not "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community." *See Argereow v. Weisberg*, 2018 ME 140, ¶ 27, 195 A.3d 1210.

This Court noted that this issue was "a close one" even under a Motion to Dismiss standard. (ECF Doc. No. 14, PageID#: 95). However, in evaluating the undisputed material facts under the motion for summary judgment standard, the call becomes clear. Kapinga has failed to set forth a prima facie case for Intentional Infliction of Emotional Distress.

### D. In Count IV, Kapinga has failed to set forth a *prima facie* case for violation of the Unfair Trade Practices Act, 5 M.R.S. §§ 205-A, *et seq*.

With respect to Count IV, Kapinga alleges a violation of the Maine Unfair Trade Practices Act based on Defendants alleged failure to renew her lease or return her security deposit due to her national origin. As with Counts I-III, Kapinga's claims relies solely on a single, stray comment regarding Duffy's belief as the source of the cockroach infestation in Kapinga's Apartment.

From Kapinga' First Amended Complaint, it is not clear what section of the Unfair Trade Practices Act she is relying upon, but 5 M.R.S. § 213(1) provides the bases for private remedies and states:

> **Court action.** Any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 207 or by any rule or regulation issued under section 207, subsection 2 may bring an action either in the Superior Court or District Court for actual damages, restitution and for such other equitable relief, including an injunction, as the court determines to be necessary and proper. There is a right to trial by jury in any action brought in Superior Court under this section.

The Maine state courts have never recognized a generalized private cause of action, but have limited any recovery to those unlawful acts and conduct set out in 5 M.R.S. § 207. In the present case, Kapinga neither pleads, nor proves any violation under section 207. Accordingly, there is no cognizable private remedy under section 213. Although Kapinga could have asserted a common law or statutory cause of action disputing the retention of her security deposit, she has not done so, and the Unfair Trade Practices Act does not provide a substitute remedy. As a matter of law, retention of the security deposit due to damages to the Apartment and a decision not to renew Kapinga's lease do not constitute unlawful, unfair, or deceptive trade practices.

For the foregoing reasons, Defendants are entitled to summary judgment on Kapinga's First Amended Complaint.

Dated at Portland, Maine this 30th day of December 2024.

                                              */s/Thomas S. Marjerison*
                                              Thomas S. Marjerison ~ Bar No. 7836
                                              Attorney for Defendants

                                              Norman, Hanson, & DeTroy, LLC
                                              Two Canal Plaza
                                              P.O. Box 4600
                                              Portland, Maine 04112
                                              (207) 774-7000
                                              tmarjerison@nhdlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of December 2024, I electronically filed Defendants' Motion for Summary Judgment with Incorporated Memorandum of Law with the Clerk of the Court using the CM/ECF system which will send notification of such filings(s) to all attorneys of record on the subject matter.

Dated at Portland, Maine this 30th day of December 2024.

                                              /s/ Thomas S. Marjerison

                                              Thomas S. Marjerison, Bar No. 7836
                                              Attorney for Defendants

                                              Norman, Hanson, & DeTroy, LLC
                                              P.O. Box 4600
                                              Portland, Maine 04112
                                              (207) 774-7000
                                              tmarjerison@nhdlaw.com