UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| THERESE KAPINGA, )<br>)<br>   Plaintiff )<br>)<br>v. )<br>)<br>TERRACE POND, LLC, and )<br>PIZZO'S PROPERTY MANAGEMENT, )<br>INC., )<br>)<br>   Defendants ) | No. 2:22-cv-00322-KFW |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**[1]

In this case, Therese Kapinga alleges that her former landlord Terrace Pond, LLC, and property management company Pizzo's Property Management, Inc., unlawfully discriminated against her based on her Congolese national origin when responding to a cockroach infestation in her apartment. The Defendants move for summary judgment. *See* Motion (ECF No. 41). For the reasons that follow, I deny the Defendants' motion.

### I. Undisputed Facts

Kapinga entered into a lease agreement with Terrace Pond for an apartment on Riverside Street in Portland in December 2020. Plaintiff's Opposing Statement of Material Facts ("PSMF") (ECF No. 46) ¶ 1; ECF No. 42-2. When she moved into the apartment, Kapinga met property manager Sean Duffy—an employee of Terrace

---

[1] The parties have consented to me presiding over all proceedings in this matter. *See* ECF No. 35.

1

Pond's property management company, Pizzo's Property Management—and he was kind to her.  PSMF ¶ 3.

Kapinga first noticed cockroaches in her apartment sometime in August 2021. *Id.* ¶ 5.  She notified Duffy about the cockroaches on September 9, 2021, by sending him a maintenance request form.  *Id.* ¶ 6.  Duffy responded that he would provide Kapinga with cockroach mitigation information and send Waltham Pest Services to treat her apartment.  *Id.* ¶ 7.  When Duffy dropped off the mitigation information at Kapinga's apartment on September 10, 2021, he observed cockroach activity and noticed that Kapinga's apartment, while not messy, did have some food debris present.  *Id.* ¶¶ 8-9; Defendants' Reply to Plaintiff's Statement of Additional Material Facts ("RSMF") (ECF No. 50) ¶ 42.

Waltham Pest Services treated the apartment on September 13, 2021, during which high levels of cockroach activity were observed in Kapinga's kitchen. PSMF ¶ 10.  On September 21, 2021, Duffy delivered a seven-day notice of lease termination to Kapinga based on "the insect activity located in" her apartment and the "detrimental impact" such activity had on the "safety and [wellbeing] of other tenants at Terrace Pond."  *Id.* ¶ 11; ECF No. 42-6.  After the notice was issued, Duffy told Kapinga and her family members on a conference call that her apartment was the source of the cockroaches and they "came in through food from her country." PSMF ¶ 12.[2]

---

[2] The Defendants seem to admit that Duffy made this statement for purposes of their summary judgment motion, or at the very least they acknowledge that there is a genuine dispute as to whether he said it.  *Compare* PSMF ¶ 12, *with* RSMF ¶ 40.  And although the evidence is not presented as

On September 22, 2021, Robert Chiamulera of Waltham Pest Services inspected Kapinga's apartment and the surrounding apartments, as a neighboring tenant had reported that cockroaches were coming in under her door. *Id.* ¶¶ 13, 17. Chiamulera observed that Kapinga's apartment had hundreds of cockroaches, which was more than any of the other apartments, and that the cockroach activity was concentrated in her kitchen. *Id.* ¶¶ 14-15; RSMF ¶ 34. He ultimately determined that the cockroaches had been present for more than two months. PSMF ¶ 16.

According to Chiamulera, Terrace Pond has a history of cockroaches in its apartment buildings, he could not determine how exactly cockroaches entered the building, and cockroaches tend to live in kitchens and bathrooms because they are attracted to warmth and water. RSMF ¶ 20. A nearby apartment in Kapinga's building had been treated for cockroaches in July 2021, but Chiamulera could not say whether the cockroaches were related to the ones in Kapinga's apartment. *Id.* ¶¶ 26, 30. He admitted that Waltham Pest Services could have addressed the cockroach activity in Kapinga's apartment sooner if they had inspected the entire building in July 2021. *Id.* ¶ 31. He further opined that the technician who treated Kapinga's apartment was a "rookie" and may not have done a thorough job in treating the cockroach infestation. *Id.* ¶ 34.

Terrace Pond ultimately initiated eviction proceedings in state court against Kapinga, but its complaint was dismissed in October 2021 for being signed by a non-attorney. *Id.* ¶ 37. On October 15, 2021, Duffy served Kapinga with a

---

clearly as it might have been, the Defendants do not contest that Duffy was generally aware that Kapinga came from another country.

3

seventy-five day notice to quit, informing her that Terrace Pond had decided not to renew her lease. PSMF ¶ 18. Kapinga moved out of the apartment on December 31, 2021. RSMF ¶ 38.

In September 2022, the Defendants sent Kapinga an invoice for Waltham Pest Service's fees and replacing a purportedly stained carpet. *Id.* ¶ 54. Kapinga disputed the charges, telling the Defendants that any damage to the carpet was normal wear and tear and that the cockroach infestation was not her fault. *Id.* ¶ 57. Nevertheless, the Defendants refused to return any of Kapinga's security deposit. *Id.* ¶ 58.

As a result of her experiences at Terrace Pond, Kapinga experienced fear, sleeplessness, nightmares, shame, loss of appetite, high blood pressure, and dizziness. *Id.* ¶¶ 49-51. She sought medical treatment for these issues. *Id.* ¶¶ 49-50, 53.

Kapinga filed a complaint of discrimination against the Defendants with the Maine Human Rights Commission (MHRC). *Id.* ¶ 39. Duffy told the MHRC that Kapinga's living conditions—namely, the food debris in her apartment and her preference for keeping the thermostat at a high temperature—made it clear that cockroaches would return even if they were successfully eradicated; he admitted, however, that he had never complained to Kapinga about her living conditions and those conditions were not the reason her lease was not renewed.[3] *Id.* ¶ 43;

---

[3] The Defendants assert that any statements to the MHRC cannot be considered here because they are subject to litigation privilege and are, therefore, nonactionable. *See* RSMF ¶¶ 39, 43, 45. While the Defendants are generally correct that individuals are shielded from civil liability for relevant statements made during judicial and quasi-judicial proceedings, litigation privilege is almost always invoked as a defense to defamation and/or libel claims. *See, e.g., Weinstein v. Old Orchard Beach Fam. Dentistry, LLC*, 2022 ME 16, ¶¶ 2, 15, 271 A.3d 758. The Defendants offer no support for the idea that

4

ECF No. 46-4 at 17-19; ECF No. 46-10.  The Defendants told the MHRC that they acted to terminate Kapinga's tenancy "because of her failure to be transparent with them about the roach problem and her failure to report its severity before it spread"; they further indicated that they never accused Kapinga "of being the source of the roaches."  RSMF ¶¶ 44-45; ECF No. 46-11 at 2-4.  Duffy later testified during his deposition in this matter that other tenants in Terrace Pond had not been evicted when cockroaches were found in their apartments.  RSMF ¶ 47.

## II.  Procedural History

Kapinga initiated this matter in October 2022.  *See* ECF No. 1.  Following the Defendants' partially successful motion to dismiss her complaint, *see* ECF Nos. 14-15, Kapinga filed an amended complaint in August 2023 containing four counts: (1) unlawful housing discrimination based on national origin, (2) unlawful hostile housing environment, (3) intentional infliction of emotional distress, and (4) violation of Maine's Unfair Trade Practices Act, *see* ECF No. 16.  Following the completion of discovery, the Defendants filed the instant motion for summary judgment.

## III.  Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Facts are material when they have the

---

statements made during MHRC proceedings cannot be used in subsequent related litigation and caselaw suggests just the opposite.  *See, e.g.*, *Venable v. T-Mobile USA, Inc.*, 603 F. Supp. 2d 211, 217 (D. Me. 2009) (considering the consistency of an employer's explanation to the MHRC for terminating an employee while deciding whether to grant summary judgment on the employee's disability discrimination claim).

5

potential to affect the outcome of the suit under the applicable law. A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Cherkaoui v. City of Quincy*, 877 F.3d 14, 23-24 (1st Cir. 2017) (cleaned up). "The party opposing summary judgment bears the burden of producing facts sufficient to deflect the swing of the summary judgment scythe," but the court must construe the record "in the light most favorable to the" opposing party and resolve "all reasonable inferences in that party's favor." *Baum-Holland v. Hilton El Con Mgmt., LLC*, 964 F.3d 77, 87 (1st Cir. 2020) (cleaned up).

## IV. Discussion

### A. Housing Discrimination Claim

The federal Fair Housing Act (FHA) and the Maine Human Rights Act (MHRA) both prohibit discrimination against any person in the terms, conditions, privileges, or rental of a dwelling—or the provision of services and facilities in connection with that dwelling—on the basis of national origin. *See* 42 U.S.C. 3604(b); 5 M.R.S.A. § 4581-A(1)(D) (Westlaw Sept. 30, 2025). I will focus my analysis on Kapinga's FHA claim as her MHRA claim is generally subject to the same standards and interpretations. *See, e.g.*, *Daniel v. Avesta Hous. Mgmt. Corp.*, No. 2:12-cv-110-GZS, 2013 WL 4541152, at *6 (D. Me. Aug. 27, 2013) ("Maine state courts look to federal case law for guidance in interpreting the [MHRA].").

Kapinga's housing discrimination claim invokes disparate treatment discrimination—i.e., intentional discrimination—which requires her to "demonstrate

6

that some discriminatory purpose was a motivating factor behind the challenged action." *Vanderburgh House LLC v. City of Worcester*, 530 F. Supp. 3d 145, 154 (D. Mass. 2021) (cleaned up).

The parties dispute whether Duffy's comment about food from Kapinga's country being the source of cockroaches is direct or circumstantial evidence of discrimination. *Compare* Motion at 8-9, *with* Opposition (ECF No. 47) at 7-9. For the purposes of assessing the Defendants' motion, I will assume it is the latter, and therefore apply the *McDonnell-Douglas* burden-shifting framework that both sides seemingly agree is controlling in such situations. *See Saint Pierre v. NFG Hous. Partners*, No. 2:21-cv-00300-GZS, 2023 WL 6378029, at *8 (D. Me. Sept. 29, 2023) (applying the *McDonnell-Douglas* framework to an FHA claim). Under that framework, if Kapinga makes a prima facie showing of discrimination, the burden shifts to the Defendants to offer a legitimate nondiscriminatory reason for the adverse actions they took against Kapinga, at which point the burden shifts back to Kapinga to show that the neutral reason was pretextual. *See Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 69 (1st Cir. 2015) (outlining the three steps of the *McDonnell-Douglas* framework).

The Defendants do not cogently argue that Kapinga has not cleared the low bar of making a prima facie showing of discrimination based on Duffy's comments about the food from her country being the source of the cockroach infestation.[4]

---

[4] The Defendants assert in a conclusory subheading that Duffy's "stray" comment is not enough to demonstrate "a prima facie case of Unlawful Housing Discrimination." Motion at 8. In the actual text of their motion, however, they only meaningfully brief the second and third steps of the

7

*See* Motion at 8; *Martinez-Burgos v. Guayama Corp.*, 656 F.3d 7, 14 (1st Cir. 2011) (describing the "prima facie stage of the burden-shifting framework" as a "relatively low bar"). And Kapinga does not meaningfully contest that the Defendants have not offered a legitimate nondiscriminatory reason for the adverse actions they took against her; namely, the cockroach activity in her apartment. *See* Opposition at 9-10. That leaves the question, then, of whether a reasonable factfinder could find that the Defendants' proffered reason was pretextual.

Pretext may be shown "by establishing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the . . . proffered legitimate reasons such that a fact finder could infer that the [defendant] did not act for the asserted non-discriminatory reasons." *Martinez-Burgos*, 656 F.3d at 14 (cleaned up). Along those lines, Kapinga has adduced evidence that the Defendants' stated reasons for attempting to evict her and ultimately not renewing her lease have shifted over time—at first Duffy told her she was the source of the cockroaches, then he told the MHRC that the actions were taken because Kapinga's living conditions would attract cockroaches again even after treatment, and the Defendants told the MHRC that the actions were taken because because Kapinga failed to timely report the cockroach infestation in her apartment before it spread and that she was never blamed for the infestation. Furthermore, Terrace Pond has a history of cockroach activity and other

---

*McDonnell-Douglas* burden shifting framework. *See id.* at 8-9. In such circumstances, they have waived any argument that they are entitled to summary judgment at the first step. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (cleaned up)).

tenants have not faced the same adverse actions as Kapinga when they have had cockroaches in their apartments. Viewing this evidence in the light most favorable to Kapinga, a reasonable jury could infer that the cockroach infestation was not the actual reason for the Defendants' actions against Kapinga. Summary judgment is therefore inappropriate on this claim.

## B. Hostile Housing Environment Claim

Although the First Circuit has not addressed the issue, other federal courts have recognized a form of housing discrimination that results from a hostile housing environment based on the protected classifications in 42 U.S.C. § 3604(b). *See Lath v. Oak Brook Condo. Owners' Assoc.*, No. 16-cv-463-LM, 2017 WL 1051001, at *4 (D.N.H. Mar. 20, 2017) (collecting cases).

The Defendants first argue that because neither First Circuit nor the Law Court have explicitly recognized hostile housing environment claims under the FHA and MHRA, respectively, that Kapinga's claim must fail. *See* Motion at 9. I disagree. District courts are routinely called upon to resolve novel issues of law, and the Defendants have offered no reason to think that First Circuit would not recognize a claim for hostile housing environment. *See Lath*, 2017 WL 1051001, at *4 ("This court will assume, favorably to [the plaintiff], that if asked to do so the First Circuit would recognize a cause of action based upon the creation of a hostile housing environment based upon . . . race or national origin."). Likewise, although it would be improper for me to "expand Maine law," *Douglas v. York Cty.*, 433 F.3d 143, 149 (1st Cir. 2005), the Law Court has consistently held that because "the MHRA generally tracks federal

9

anti-discrimination statutes, it is appropriate to look to federal precedent for guidance in interpreting the MHRA," *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 14 n.7, 824 A.2d 48 (cleaned up).  In such circumstances, I conclude that it is appropriate for me to make an informed prophecy that, like the First Circuit, the Law Court would recognize a claim of hostile housing environment under the MHRA. *See* 5 M.R.S.A. § 4581-A(1)(D) (Westlaw); *Luc v. Wyndham Mgmt. Corp.*, 496 F.3d 85, 88 (1st Cir. 2007) (noting that federal courts may "consult other sources" and "make an informed prophecy about what rule the state courts would likely follow" (cleaned up)).

As for the elements of a hostile housing environment claim, the Seventh Circuit, borrowing the framework from hostile work environment claims, has held,

> A hostile-housing environment claim requires a plaintiff to show: (1) that she endured unwelcome harassment based on a protected characteristic; (2) the harassment was severe or pervasive enough to interfere with the terms, conditions, or privileges of services or facilities; and (3) that there is a basis for imputing liability to the defendant.

*Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 861-62 (7th Cir. 2018).

Viewing the evidence in a light most favorable to Kapinga, a factfinder could reasonably find that she endured unwelcome harassment due to her Congolese national origin when Duffy blamed the food from her country for the cockroach infestation, and that there is a basis for imputing that harassment to the Defendants. The Defendants implicitly concede these points but argue that Duffy's isolated comment is not enough to show that the harassment was severe or pervasive. *See* Motion at 9.  I agree with the Plaintiff, *see* Opposition at 14-16, however, that a

10

reasonable factfinder could find that the harassment extended beyond just the comment to blaming her for the cockroaches, attempting to evict her, failing to renew her lease, and failing to return her security deposit—and that these actions interfered with Kapinga's use of her apartment. That is not to say that a factfinder would be compelled to find that this conduct rose to the level of severe and pervasive harassment or that all these actions were related to Kapinga's national origin, only that Kapinga has presented enough evidence to survive summary judgment.

### C.  Intentional Infliction of Emotional Distress Claim

To succeed on a claim of intentional infliction of emotional distress (IIED), a plaintiff must show that

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Argereow v. Weisberg*, 2018 ME 140, ¶ 27, 195 A.3d 1210 (cleaned up).

Once again, the Defendants are laser focused on the comment by Duffy, arguing "it was entirely reasonable to believe the source of the cockroach infestation was" Kapinga's apartment and that "expressing this belief was not so extreme and outrageous as to exceed all bounds of decency." Motion at 10. This argument, however, ignores the evidence that Duffy blamed the food from Kapinga's country as the source of the cockroaches, as well as the overall series of events the flowed from the cockroach infestation. As I noted in my recommended decision on the Defendants'

11

motion to dismiss, whether the Defendants' conduct toward Kapinga, in aggregate, exceeded the bounds of all decency is a close question on which reasonable minds may differ, and in such circumstances, it should be presented to the factfinder. *See* ECF No. 14 at 11-13; *Bratton v. McDonough*, 2014 ME 64, ¶ 23, 91 A.3d 10150 ("Where reasonable people may differ, it is for the jury to determine whether, in a particular case, the conduct has been sufficiently extreme and outrageous to result in liability." (cleaned up)). At bottom, the evidence, when viewed in the light most favorably to Kapinga, is sufficient for this claim to survive summary judgment.[5]

### D. Maine Unfair Trade Practices Act Claim

I previously granted Kapinga permission to amend her complaint to add a Maine Uniform Unfair Trade Practices Act (UTPA) claim to the extent that such a claim rested on the Defendants' failures to renew her lease or return her security deposit. I did so over the Defendants' objections that UTPA does not permit such a claim. In their motion for summary judgment, Defendants' raise nearly identical challenges, *see* Motion at 11, which are unsuccessful for the same reasons I previously explained. The Defendants also cursorily argue that Kapinga has not provided sufficient evidence of a violation under 5 M.R.S.A. §§ 207 and 213(1) (Westlaw Sept. 30, 2025) and that they are therefore entitled to summary judgment. In the

---

[5] For the first time in their reply, the Defendants argue that Kapinga has failed to show sufficient evidence that it was their conduct that contributed to her emotional distress and that her distress was so severe that no reasonable person could endure it. *See* Reply (ECF No. 48) at 5-6. I will not address these arguments because they are waived. *See Cambridge Mut. Ins. Co. v. Patriot Mut. Ins. Co.*, 323 F. Supp. 2d 95, 106 (D. Me. 2004) (noting, in the summary judgment context, that the "Court will not consider arguments first presented in a reply memorandum" in support of summary judgment because to do so would deprive the other side "of the ability to make cogent arguments to counter [the] motion for summary judgment").

absence of any attempt by the Defendants to (1) develop a meaningful argument on this point or (2) engage with the reasoning of my order granting Kapinga permission to amend her complaint, I decline to grant them summary judgment on this claim.[6] *See Zannino*, 895 F.2d at 18.

## V. Conclusion

For the foregoing reasons, the Defendants' motion for summary judgment is **DENIED**.

Dated: September 30, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge

---

[6] The Defendants argue for the first time in their reply that Kapinga's UTPA claim fails because she did not provide the requisite presuit notice required by 5 M.R.S.A. § 213(1-A) (Westlaw). *See* Reply at 6-7. For the same reasons explained *supra* n.5, I deem this argument waived and decline to address it.